UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

ZORIDEA BOBAN, CHRISTINA BORRERO, KEITH
CHRISTOPHER, on behalf of themselves and as
representatives of a class of persons similarly situated,

       Plaintiffs,

-against-

THE BANK JULIS BAER POSTRETIREMENT
HEALTH AND LIFE INSURANCE PROGRAM, THE
BANK JULIUS BAER & CO LTD. SEVERANCE PAY
PLAN, BANK JULIUS BAER & CO. LTD. and
JULIUS BAER AMERICAS, INC.

       Defendants.
-----------------------------------------------------------X

**COMPLAINT**

__Civ.___

**Plaintiffs Request Trial by Jury**

ECF Case



# FIRST CLAIM
(For relief pursuant to §502, *et seq.*, of ERISA, 29 U.S.C. §1132, *et seq.*)

Plaintiffs Zoridea Boban, Christina Borrero and Keith Christopher (the "named plaintiffs") on behalf of themselves and as representatives of a class of other persons similarly situated (the "class members") allege that:

1. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e)(1), and supplemental jurisdiction over plaintiffs' state law claims pursuant to 28 U.S.C. §1367.

2. The venue of this action is properly placed in the Southern District of New York under 29 U.S.C. §1332(e) and 28 U.S.C. §1391 (b) and (c) because the plans at issue are administered in and the breach occurred in the Southern District.

3. Defendant Bank Julius Baer & Co. Ltd. (the "bank") is a Switzerland-based wealth management firm concentrating on banking and asset management for private and institutional clients.

4. The bank has offices and does business at 330 Madison Avenue, New York, New York 10017.

5. The bank operated and administrated defendant Bank Julius Baer Postretirement Health and Life Insurance Program and defendant Bank Julius Baer & Co Ltd. Severance Pay Plan (the "plans") for the purposes of providing medical, dental, and life insurance coverage to current and former employees.

6. Upon information and belief, defendant Julius Baer Americas, Inc. ("Baer Americas") became administrator of the plans in approximately 2007.

7. Named plaintiff Zoridea Boban ("Boban") was employed by the bank beginning in or about March 1979.

8. The bank terminated Boban's employment on November 28, 2003.

9. Named plaintiff Christina Borrero ("Borrero") was employed by the bank beginning in or about September 1986.

10. The bank terminated Borrero's employment on July 22, 2003.

11. Named plaintiff Keith Christopher ("Christopher") was employed by the bank beginning in or about 1982.

12. The bank terminated Christopher's employment on November 28, 2003.

**The separation agreements**

13. Upon termination, each named plaintiff entered into a separation agreement with the bank, under which they were each considered "retirees."

14. Each separation agreement provided that "as a retiree, your coverage under [the bank]'s group health and dental insurance plans with continue as it is now, provided that you continue to pay the required employee contributions . . . ."

15. By letters dated December 1, 2003 (the "December 1 letters") to each named plaintiff, the bank advised each named plaintiff that "as a retiree, your medical and dental coverage will continue with the bank provided you pay the current active employee's share of the monthly premium."

16. The bank's promise that each named plaintiff could participate in the plans by paying the same rates paid by current active employees was a material factor in inducing the named plaintiffs to accept and sign the separation agreements.

17. The December 1 letters contained no mention of any alleged right of the bank to amend the plans.

18. Less than one month later, in letters dated December 30, 2003, the bank advised each named plaintiff that retiree contributions for medical, dental and life insurance coverage would be increased as detailed in an enclosed plan document, which disclosed that the new contribution rates for retirees would be greater than the rates for current active employees.

**Exhaustion of administrative remedies**

19. By letter of November 2, 2006, through legal counsel, the named plaintiffs requested that the bank, as plan administrator, review the increase in required contributions.

20. By letter of January 3, 2007 (the "denial letter") Patricia Sullivan, "on behalf of the Plan Administrator, Julius Baer Americas Inc.," made an adverse benefit determination, denying the named plaintiffs' claims.

21. The denial letter stated that the adverse benefit determination was "based on the Company's reserved right to amend the Plan" found in "Sections IV and V of the Plan document" and in "the Employee Handbook dated June 2003."

22. The "Plan document" referred to in the denial letter is the "Amendment to the Bank Julius Baer Postretirement Health and Life Insurance Program," which became effective December 31, 2003—after plaintiffs had entered into the severance agreements.

23. The "Employee Handbook" referred to in the denial letter is not a plan document or a summary plan description.

24. The alleged "reservation of rights" in the Employee Handbook states that the bank "reserves the right to amend or terminate any of these programs or to require or increase employee premium contributions toward any benefits at its discretion."

25. The defendant "Post Retirement Health and Life Insurance Program" is not listed as one of "these programs" to which the alleged reservation of rights refers.

26. The alleged reservation of rights, by its plain language, only purports to allow the bank to increase premium contributions of current "employees," not retirees.

27. By letter of June 27, 2007, through legal counsel, the named plaintiffs appealed the adverse benefit determination.

28. By letter of August 16, 2007, Barbara Hahn, Senior Vice President and Head of Human Resources of Baer Americas, denied plaintiffs' appeal, again based on the bank's alleged "reserved right to amend the plan."

29. Plaintiffs have exhausted their administrative remedies.

**Class action requirements**

30. Plaintiffs bring this claim, pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of themselves and a class of former employees of the bank who were promised that they could participate in the plans by paying the same rates paid by current active employees.

31. Plaintiffs meet the prerequisites to bring this action on behalf of the class because:

   a. Numerosity: the class is so numerous that joinder of all members as individual plaintiffs is impracticable. While the exact number of potential class members is unknown and can only be ascertained through discovery, plaintiffs believe that numerous other retirees of the bank are eligible class members.

   b. Commonality: there are questions of law and fact common to the class, including whether the bank made enforceable promises to continue to provide plan benefits to retirees at the same premium rates paid by current employees, whether the bank breached fiduciary duties by misleading retirees and failing to act in accordance with plan documents, and whether the bank is estopped from increasing the amounts of retirees' premiums under the plans above the premiums required of current employees.

   c. Typicality: plaintiffs' claims are typical of the claims of the class because plaintiffs and members of the class each sustained or may suffer loss of insurance benefits and increased premium costs arising out of the violations of the plans as contained herein.

   d. Adequacy: plaintiffs will fairly and adequately protect the interests of the class. Plaintiffs have no interests that are antagonistic to, or in conflict with, the interests of the class as a whole, and have engaged competent counsel to ensure protection of the interests of the class as a whole.

32. As an ERISA action, this action is suited for class certification pursuant to Rule 23(b) because: i) the prosecution of separate actions by the members of the class would create a risk of adjudications with respect to individual members of the class that

would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications, or substantially impair or impede their ability to protect their interests, ii) the prosecution of separate actions by the members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the class, which would establish incompatible standards of conduct for defendants, and iv) questions of law and fact common to members of the class predominate over any questions affecting only individual members, and the class action is superior to other available methods for the fair and efficient adjudication of this controversy.

33. By reason of the foregoing, plaintiffs and the class members have valid claims under ERISA §502(a)(1)(B) (29 U.S.C. § 1132(a)(1)(B)).

34. By reason of the foregoing, plaintiffs and the class members are entitled to:

   a. An order disgorging and awarding to plaintiffs and the class such profits as the bank derived from its wrongful conduct, including the avoidance of wages and fringe benefits that would have been paid to retirees if they had not been induced to retire, premiums paid by retirees after the contribution rates for retirees were increased to be greater than the rates for current active employees, and medical expenses unjustly shifted to retirees who secured their health insurance coverage from third parties.

   b. An order requiring that the bank restore the plans as they existed at the time each plaintiff or class member retired, or create new plans with provisions identical to the plans as they existed at the time each plaintiff or class member retired; and

   c. An order enjoining the bank from reducing or terminating retirees' plan benefits; and

   d. An order enjoining the bank from increasing contribution rates for retirees above the rates for current active employees; and

   e. The costs of this litigation, including attorney's fees; and

   f. Such other and further relief as this Court deems just and equitable.

## SECOND CLAIM

### (Breach of fiduciary duties)

35. Plaintiffs and the class members repeat and reallege paragraphs 1 through 32 as though fully set forth herein.

36. The bank and Baer America (collectively the "plan administrators") owed fiduciary duties to plaintiffs and class members under ERISA § 404 (29 U.S.C. §1104) as administrators of the plans.

37. The plan administrators, acting in a fiduciary capacity, made affirmative misrepresentations to and failed to adequately inform plaintiffs and class members when the plan administrators promised that they could participate in the plans by paying the same rates paid by current active employees.

38. The plan administrators' promise that the plaintiffs and class members could participate in the plans by paying the same rates paid by current active employees was a material factor in inducing plaintiffs and class members to accept and sign the separation agreements.

39. The plan administrators failed to present information to plaintiffs and class members regarding any alleged right to amend the plans when counseling them regarding retirement decisions.

40. The plan administrators breached their fiduciary duty to deal honestly with plan beneficiaries under ERISA § 404(a)(1)(A) and (B) by promising plaintiffs and class members that they could participate in the plans by paying the same rates paid by current active employees, then requiring them to pay higher rates than current employees less than one month later.

41. The plan administrators breached their fiduciary duties under ERISA §404(a)(1)(D) by failing to act in accordance with plan documents providing that retirees could participate in the plans by paying the same rates paid by current active employees.

42. By reason of the foregoing, plaintiffs and the class members are entitled to the relief set forth in paragraph 34.

## THIRD CLAIM
### (Promissory estoppel)

43. Plaintiffs and the class members repeat and reallege paragraphs 1 through 32 as though fully set forth herein.

44. Defendants promised plaintiffs and the class members that they could participate in the plans by paying the same rates paid by current active employees.

45. Defendants used the promised benefits to induce plaintiffs and the class members to retire and to accept and sign the separation agreements.

46. Plaintiffs and the class members relied on defendants' promise in deciding to retire and to accept and sign the separation agreements.

47. Reliance on defendants' promise caused injury to plaintiffs and the class members by, *inter alia*, inducing them to leave their employment and to not seek other severance benefits they might have negotiated had the promise not been made.

48. Plaintiffs and the class members will suffer injustice if defendants' promise is not enforced.

49. Therefore, the defendants are estopped from increasing the amounts of retirees' premiums under the plans above the premiums required of current employees

50. By reason of the foregoing, plaintiffs and class members are entitled to the relief set forth in paragraph 34.

November 10, 2009

**MICHAEL A. FAILLACE**
MICHAEL FAILLACE & ASSOCIATES, P.C.
110 East 59th Street, 32nd Floor
New York, NY 10022
(212) 317-1200

*Attorneys for plaintiffs*

**PETER G. EIKENBERRY** (3684)
74 Trinity Place, Suite 1609
New York, New York 10006
(212) 385-1050